## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | )<br>)<br>) | |
|---|---|---|
| SHAWN TOWNSEL, | ) | |
| Plaintiff, | )<br>) | |
| v. | ) | No. 15 C 10332 |
| | ) | |
| JASON JAMERSON and ELLEN SPAULDING, | )<br>) | Judge Virginia M. Kendall |
| | ) | |
| Defendants. | )<br>)<br>) | |

## MEMORANDUM OPINION AND ORDER

On November 15 2015, Plaintiff Shawn Townsel initiated this *Bivens* action against Defendants, U.S. Postal Service employee Ellen Spaulding and Postal Inspectors Jason Jamerson and Mark Maskas,[1] for violations of Plaintiff's Fourth Amendment rights. Townsel alleges that the Defendants used excessive force (Count I), conducted an unreasonable search and seizure (Counts I and III), and falsely detained him (Count II) during the course of their investigation into claims that he improperly possessed a firearm on Postal Service property For the reasons stated herein, Defendants' Motion to Dismiss is granted in part and denied in part.

## BACKGROUND

The Court treats the following allegations as true for purposes of evaluating this motion. *See Gillard v. Proven Methods Seminars, LLC*, 388 F. App'x 549, 550 (7th Cir. 2010). Plaintiff was employed at the U. S. Postal Service (USPS) O'Hare Airport International Service Center (ISC). (Dkt. 1 ¶ 21.) On November 23, 2013, three female employees at the ISC informed Defendant Ellen Spaulding, Manager of Distribution Operations, that Plaintiff had threatened a

---

[1] Defendant Mark Maskas was dismissed as a defendant on May 24, 2016. (Dkt. 7.)

1

coworker with a firearm and had also threatened them.² (Dkt. 1 ¶ 12.)

The following day, Spaulding interviewed Plaintiff regarding these allegations in the presence of Defendant Jamerson and Postal Inspector Mark Maskas (the Inspectors). (Dkt. 1 ¶ 13.) After the interview, the Inspectors searched Plaintiff's locker and belongings, where they discovered his car key. (Dkt. 1 ¶ 14.) Defendant Jamerson remained with Plaintiff in the ISC while Maskas located Plaintiff's vehicle. (Dkt. 1 ¶ 14.) After his car was located in the ISC parking garage, Plaintiff was placed in handcuffs and driven to his vehicle. (Dkt.1 ¶ 15.)

The Inspectors searched Plaintiff's vehicle where they found a cased and unloaded 9mm Beretta and a box of 9mm ammunition in violation of federal law.³ (Dkt. 1 ¶ 15.) After finding the gun, the Inspectors transported Plaintiff to a holding cell at the ISC while paperwork and evidence were processed. (Dkt. 1 ¶ 16.) Plaintiff was then shackled and transported to a different holding facility. (Dkt. 1 ¶ 17.) Plaintiff claims that during his transport all of the Defendants cursed or yelled at him, and that Inspectors Jamerson and Maskas assaulted him. (Dkt. 1 ¶¶ 16-17.) After six hours at the second holding facility, the Inspectors transported Plaintiff back to the ISC where he was detained and eventually released. (Dkt. 1 ¶¶ 18, 20.) As a result of this incident, Plaintiff was put on off-duty status based on an Emergency Placement recommendation from Ms. Spaulding, and was eventually terminated. (Dkt. 1 ¶ 21.)

Plaintiff eventually paid a fine for possessing a firearm on USPS property, a misdemeanor in violation of 39 C.F.R. § 232.1(l) (2017) ("Notwithstanding the provisions of any

---

² Plaintiff maintains that these were false statements made against him in retaliation for failing to socialize with these women outside of work. (Dkt. 1 ¶ 11.)
³ Plaintiff now claims that this was not a violation because the incident occurred after the District Court of Colorado invalidated the regulation as unconstitutional. *Bonidy v. U.S. Postal Serv.*, No. 10-CV-02408-RPM, 2013 WL 3448130, at *1 (D. Colo. July 9, 2013), *aff'd in part, rev'd in part and remanded*, 790 F.3d 1121 (10th Cir. 2015). (Dkt. 1 ¶ 15.) As discussed below, this is not the proper forum for Plaintiff to challenge his criminal conviction. Defendants also point out that the Tenth Circuit reversed the district court's decision invalidating the statute. *Bonidy v. U.S. Postal Serv.*, 790 F.3d 1121 (10th Cir. 2015), *cert. denied*, 136 S. Ct. 1486, 194 L. Ed. 2d 550 (2016). (Dkt. 23 at 11.)

other law, rule or regulation, no person while on postal property may carry firearms, other dangerous or deadly weapons, or explosives, either openly or concealed, or store the same on postal property, except for official purposes.").

## **LEGAL STANDARD**

For a complaint to survive a motion to dismiss brought pursuant to Rule 12(b)(6), it must contain sufficient factual matter to state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible on its face when the complaint contains factual content that supports a reasonable inference that the defendant is liable for the harm. *Id.* In making the plausibility determination, the Court relies on its "judicial experience and common sense." *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) (quoting *Iqbal,* 556 U.S. at 679). The complaint should be dismissed only if the plaintiffs would not be entitled to relief under any set of facts that could be proved consistent with the allegations. *Christensen v. Cty. of Boone, IL*, 483 F.3d 454, 458 (7th Cir. 2007) (citations omitted). For purposes of this motion, the Court accepts all well-pleaded allegations in the complaint as true and draws all reasonable inferences in the non-movant's favor. *See Yeftich v. Navistar, Inc.*, 722 F.3d 911, 915 (7th Cir. 2013).

## **DISCUSSION**

As Defendants are all federal employees, Plaintiff brings his claims pursuant to *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 374 (1971) and 28 U.S.C. § 1331.[4] *Bivens* actions provide "an implied private action for damages against federal officers alleged to have violated a citizen's constitutional rights." *Iqbal*, 556 U.S. at 675. While "[t]he factors necessary to

---

[4] Plaintiff originally claimed jurisdiction for his Complaint under 42 U.S.C. §§ 1983 and 1988, but subsequently conceded that these statutes do not confer jurisdiction. (*See* Dkt. 27 at 9. "Plaintiff will withdraw *instanter* any references to 42 U.S.C. §§ 1983 and 1988, as the Defendants admittedly are federal officials, and that reference was in error.")

3

establish a *Bivens* violation will vary with the constitutional provision at issue"—*Iqbal*, 556 U.S. at 676—the Court in *Bivens* noted that any violation of an individual's right to be secure in their person from unreasonable search and seizure "by a federal agent acting under color of his authority gives rise to a cause of action for damages consequent upon his unconstitutional conduct." *Bivens*, 403 U.S. at 389.

Defendants advance four arguments in support of their motion to dismiss. First, they argue that Plaintiff's claims are barred by the Supreme Court's rule in *Bush v. Lucas*, which precludes *Bivens* actions by federal employees whose claims could be addressed by a comprehensive statutory scheme that provides for remedies against the United States. *Gustafson v. Adkins*, 803 F.3d 883, 889 n.5 (7th Cir. 2015); *see also Bush v. Lucas*, 462 U.S. 367, 378 (1983). Second, Defendants contend that because Plaintiff did not invalidate his underlying gun possession conviction, his claims are barred by the Supreme Court's rule in *Heck v. Humphrey*, that "a constitutional claim that would undermine a criminal conviction if vindicated cannot be brought until the defendant's conviction is nullified." *Wallace v. City of Chicago*, 440 F.3d 421, 425 (7th Cir. 2006), *aff'd sub nom. Wallace v. Kato*, 549 U.S. 384 (2007); *see also Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994). Third, Defendants argue that Plaintiff's suit should be dismissed because he failed to adequately plead his Fourth Amendment claims against each of the Defendants individually. Finally, Defendants argue that Plaintiff's claims should be dismissed because they are entitled to qualified immunity.

**I.** ***Bush v. Lucas***

Defendants first argue that the Supreme Court's decision in *Bush v. Lucas* and its progeny preclude Plaintiff's suit. (Dkt. 23 at 7.) In *Lucas*, the Supreme Court determined that federal employees are not entitled to bring constitutional tort suits when comprehensive statutory

4

remedies can address their claims. *Lucas*, 462 U.S. at 388-89. This reasoning applies to any administrative scheme that "provide[s] meaningful redress and thereby foreclose[s] the need to fashion a new, judicially crafted cause of action." *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 68 (2001). The Seventh Circuit has specifically precluded constitutional tort suits brought by USPS employees pursuant to *Bush v. Lucas. See Ellis v. U.S. Postal Serv.*, 784 F.2d 835, 839-40 (7th Cir. 1986) (noting that "Congress expressly authorized" appropriate civil service remedies).

Defendants argue that pursuant to *Lucas*, Plaintiff's suit is barred because, as a USPS employee, the Civil Service Reform Act and the Federal Employees Compensation Act provide comprehensive administrative remedies to address his claims. (Dkt. 28 at 2-3.) Plaintiff contends that, because he is not seeking redress for an employment action, *Lucas* is inapplicable. (Dkt. 27 at 6-7.)

### A. Civil Service Reform Act

The CSRA creates a "framework for evaluating adverse personnel actions against [federal employees]." *United States v. Fausto*, 484 U.S. 439, 443 (1988) (quoting *Lindahl v. OPM*, 470 U.S. 768, 774 (1985)); 5 U.S.C. § 2302(a)(2)(A) (defining a "personnel action" as a(n) appointment; promotion; disciplinary or corrective action; detail, transfer or reassignment; reinstatement; restoration; reemployment; performance evaluation; decision concerning pay, benefits, or awards, psychiatric testing or evaluation; enforcement of a nondisclosure policy; or any other significant change in duties, responsibilities, or working conditions). The Seventh Circuit has held that claims of Fourth Amendment violations against federal employers that are not "personnel actions" are not precluded by the CSRA. *Gustafson*, 803 F.3d at 888-89.

In this case, Plaintiff's claims of excessive force, unreasonable search and seizure, and unlawful detention cannot be construed as "personnel actions" under the plain meaning of the

5

statute, nor have Defendants articulated how their alleged actions constituted personnel actions. Furthermore, the Supreme Court, Seventh Circuit, and several other circuit courts have determined that claims similar to Plaintiff's are outside the scope of the CSRA. *See Lucas*, 462 U.S. at 385 n.28 ("[C]ertain actions by supervisors against federal employees, such as wiretapping, warrantless searches, or uncompensated takings, would not be defined as 'personnel actions' within the [CSRA]."); *see also Gustafson*, 803 F.3d at 888 (noting that the installation of a hidden camera in federal employee's locker room was not a "personnel action" under the CSRA and therefore the CSRA did not bar the plaintiff's *Bivens* action)[5]; *Sarullo v. U.S. Postal Serv.*, 352 F.3d 789, 796-97 (3d Cir. 2003) (holding that a recording that USPS supervisors took during an investigation into whether the plaintiff was engaged in illegally selling drugs in the work place "[did] not qualify as a 'personnel action' within the statutory scheme implemented by the CSRA"); *Stewart v. Evans*, 275 F.3d 1126, 1130 (D.C. Cir. 2002) ("*Bush* virtually compels the conclusion that the Act does not preclude a *Bivens* action for a warrantless search," including an alleged unwarranted review of a federal employee's personal documents by her supervisor.); *Collins v. Bender*, 195 F.3d 1076, 1080 (9th Cir. 1999) ("Where the only connection between a supervisor's illegal search of a government worker's residence and that worker's employment is the supervisor's hunch that the worker may be dangerous, the search is too attenuated from the worker's employment to be considered a personnel action."). (Dkt. 27 at 7.) The CSRA does not provide an alternate remedy for Plaintiff's Fourth Amendment claims and dismissal based on the CSRA is denied.

---

[5] Defendants fail to address the Supreme Court's articulation in *Lucas* that warrantless searches are not "personnel actions" under the CSRA, nor do they address the Seventh Circuit's holding in *Gustafson*, which found that FECA and the CSRA did not preclude a *Bivens* action alleging Fourth Amendment violations. Instead, in their reply, Defendants rely on a number of district court decisions from other circuits, many of which are factually or procedurally distinguishable. *See, e.g.*, *Hightower v. United States*, 205 F. Supp. 2d 146 (S.D.N.Y. 2002) (finding that FECA precluded *Bivens* action where Plaintiff affirmatively represented that injuries were sustained in the course of duty and had collected compensation under FECA).

### B. Federal Employees Compensation Act

Defendants also argue that *Lucas* bars the Plaintiff's suit because the Federal Employees Compensation Act (FECA) provides the exclusive remedy against the United States for federal employees who suffer injuries "sustained while in the performance of [his or her] duty." 5 U.S.C. § 8102(a). Defendants, however, have failed to articulate how the Plaintiff's injuries were sustained in the performance of his duties. Furthermore, the Seventh Circuit has noted that the FECA allows for suits against parties other than the United States and has refused to preclude *Bivens* actions against fellow co-employees. *See Gustafson*, 803 F.3d at 890 (citing *Salazar v. Ballesteros,* 17 Fed.Appx. 129, 130-1 (4th Cir. 2001)) (finding that, due to the FECA's silence on co-employee suits and the nature of the plaintiff's injuries, the FECA did not bar plaintiff's Fourth Amendment *Bivens* claim). Because Plaintiff is bringing claims against his former coworkers instead of the United States and his allegations cannot be easily categorized as work-related injuries, the FECA does not preclude Plaintiff's suit.

## II. *Heck v. Humphrey*

Defendants also argue that Plaintiff's claims are precluded by the Supreme Court's decision in *Heck v. Humphrey*, which bars constitutional tort claims that imply the invalidity of a related conviction. 512 U.S. 477 (1994). Defendants argue that *Heck* bars Plaintiff's suit because he "failed to contest the related federal misdemeanor weapons charges and instead paid a fine" and that his success in this suit would at least imply the invalidity of his underlying conviction. (Dkt. 23 at 7-8.) Plaintiff responds that his successful Fourth Amendment claims will not invalidate his misdemeanor conviction because an officer who physically abuses a suspect, even if the suspect committed a crime, is still subject to a Fourth Amendment claim. (Dkt. 27 at 7-8.)

Although *Heck* involved a § 1983 action, the Seventh Circuit has also applied its reasoning to *Bivens* actions. *See Allen v. Gibbons*, 176 F. App'x 671, 673 (7th Cir. 2006) (citing *Heck* 512 U.S. at 487) (A *Bivens* plaintiff "may not seek damages for violations of his civil rights arising from a criminal prosecution if a judgment in his favor 'would necessarily imply the invalidity of his conviction or sentence.'"). In the instant suit, the Plaintiff was convicted of a misdemeanor weapons charge, paid the associated fine, and never contested or otherwise invalidated the conviction. The Court must therefore analyze whether any of the Plaintiff's claims imply the invalidity of his conviction.

Allegations of false detention, unreasonable search, and excessive force do not necessarily imply the invalidity of a conviction. *See Tolliver v. City of Chicago*, 820 F.3d 237, 243 (7th Cir. 2016) (noting that a civil suit for excessive force does not necessarily imply the invalidity of a conviction); *Rollins v. Willett*, 770 F.3d 575, 576-77 (7th Cir. 2014) (finding that unlawful seizure claim was not barred by *Heck* because it would not imply the invalidity of Plaintiff's conviction, where there was irrefutable evidence of guilt); *Booker v. Ward*, 94 F.3d 1052, 1056 (7th Cir. 1996) ("a wrongful arrest claim, like a number of other Fourth Amendment claims, does not inevitably undermine a conviction; one can have a successful wrongful arrest claim and still have a perfectly valid conviction").

Nevertheless, when a "plaintiff's factual claims in the civil suit necessarily imply the invalidity of the criminal conviction, then *Heck* bars the civil suit." *Tolliver*, 830 F.3d at 243. In the instant matter, Plaintiff alleges that he was falsely detained and unreasonably searched because: (1) his co-workers falsely told Spaulding that he had made threats (Dkt. 1 ¶ 12); and (2) the search and detention took place after a district court in Colorado struck down the ban on firearms in USPS parking lots. (*Id.* ¶ 15.) Plaintiff also alleges that there were no exigent

circumstances and that the search occurred without his consent. (*Id.* ¶¶ 24, 35.) Although claims for false arrest and unreasonable search do not necessarily imply the invalidity of a conviction, in this case, Plaintiff's claims imply the invalidity of his conviction because he argues that the search was unreasonable and that he was falsely detained because the regulation he violated was unconstitutional or otherwise invalid at the time of his arrest. This line of attack necessarily implies the invalidity of his conviction. *See, e.g.*, *Purnell v. McCarthy*, No. 14 C 2530, 2017 WL 478301, at *3 (N.D. Ill. Feb. 6, 2017) (finding false arrest claim precluded by *Heck* because the "claim relies on allegations that are flatly inconsistent with the facts supporting [the] convictions"). Therefore, Plaintiff's unreasonable search and seizure claim in Counts I and III, and his false detention claim in Count II, are dismissed without prejudice under *Heck*.[6]

Plaintiff's excessive force claim, however, does not suffer from such a defect. The fact that Plaintiff alleges that he was assaulted while in custody does not implicate his gun conviction whatsoever. *See Evans v. Poskon*, 603 F.3d 362, 364 (7th Cir. 2010) (refusing to bar claims of excessive force under *Heck* because injuries resulting from excessive force are not normal consequences of arrest, but stating that plaintiff's claim related to being taken into custody "must be stayed or dismissed under . . . *Heck*"). Therefore, Plaintiff's excessive force claim is not dismissed under *Heck*.

### III. Failure to State a Claim

Defendants also submit that Plaintiff's Complaint fails to state a claim because it makes conclusory allegations against the Defendants as a group, rather than against each of them individually. (Dkt. 23 at 8-9; Dkt. 28 at 4-6.) Defendants go on to argue that even if Plaintiff had specifically connected the allegations to each Defendant, those allegations are insufficient as

---

[6] *See Polzin v. Gage*, 636 F.3d 834, 839 (7th Cir. 2011) (holding that a district court's dismissal under *Heck* should be without prejudice so that the plaintiff can pursue constitutional claims if the conviction is ever invalidated).

a matter of law. (*Id.*) As noted above, to survive a Rule 12(b)(6) challenge, a complaint must contain factual content that supports a reasonable inference that the defendant is liable for the harm. *Iqbal*, 556 U.S. at 678. Furthermore, in the context of *Bivens* claims, "individual government officials 'cannot be held liable' in a *Bivens* suit 'unless they themselves acted' unconstitutionally." *Wood v. Moss*, 134 S. Ct. 2056, 2070 (2014) (quoting *Iqbal*, 556 U.S. at 683); *see also Vance v. Rumsfeld*, 701 F.3d 193, 203 (7th Cir. 2012) ("[L]iability under a *Bivens*-like remedy is personal.").

Furthermore, Fourth Amendment claims of excessive force are analyzed under the "objective reasonableness" standard. *Graham v. Connor*, 490 U.S. 386, 395 (U.S. 1989). Under this standard, a plaintiff must allege that officers acted unreasonably in light of the facts and circumstances of the situation they faced, without regard to their underlying motives or subjective intent toward the suspect. *Id.* at 397. Inherent in this analysis is the assumption that "the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Id.* at 396. Yet, "[t]he nature and extent of the force that may reasonably be used to effectuate an arrest depends on the specific circumstances of the arrest." *Cyrus v. Town of Mukwonago*, 624 F.3d 856, 861 (7th Cir. 2010).

To survive a motion to dismiss, a claim of excessive force must allege "'*some* force,' some 'physically abusive governmental conduct,' some 'physical force,' applied to a suspect." *See e.g. Morales-Placencia v. City of Chicago*, No. 08 C 5365, 2011 WL 1542964, at *2 (N.D. Ill. Apr. 21, 2011) (quoting *McNair v. Coffey,* 279 F.3d 463, 467 (7th Cir. 2002)) (holding that Plaintiff's complaint alleging that officers brandished firearms during a search of the plaintiff's home was, without more, insufficient to state a claim).

Plaintiff's excessive force claim includes the following allegations: (1) Jamerson

physically assaulted Plaintiff while he was in custody (Dkt. 1 ¶ 17); (2) Plaintiff was handcuffed and shackled (*Id.* ¶ 3); (3) all of the Defendants cursed and yelled at him (*Id.* ¶¶ 16-17); (4) and as a result of these actions, he suffered injuries, mental suffering, anguish and humiliation.[7] (*Id.* ¶¶ 33, 42, 46).

### A. Allegations of Handcuffing and Shackling are Insufficient to Support an Excessive Force Claim.

As part of his excessive force claim, Plaintiff makes several generalized allegations that he "was handcuffed," "shackled," and "chained to a wall." (*Id.* ¶¶ 15, 17-8.) These allegations fail as matter of law for two reasons. First, they fail to identify which Defendant handcuffed, shackled, or chained him to the wall. *Wood*, 134 S. Ct. at 2070. Second, Plaintiff merely alleges that handcuffs and shackles were employed in his detention but fails to articulate how their use constituted excessive force or was otherwise unreasonable. *See e.g. Muhammad v. Vill. of S. Holland*, No. 12-CV-275, 2013 WL 1788448, at *4 (N.D. Ill. Apr. 25, 2013) (dismissing a claim of excessive force involving the use of overly tight handcuffs because "[p]lacing handcuffs on an individual during an arrest is not a *per se* excessive force violation" and that "[it is unclear from the facts alleged who, if anyone, used excessive force on Plaintiff, and Plaintiff does not explain what injuries she incurred"); *Annan v. Vill. of Romeoville*, No. 12 C 3577, 2013 WL 673484, at *4 (N.D. Ill. Feb. 25, 2013) (holding that the act of placing handcuffs on an individual is deemed reasonable and acceptable under the Fourth Amendment, and dismissing a claim of excessive force without prejudice until the plaintiff could "plead some facts that describe the force the officers used in executing the arrest").

Similarly, although the Seventh Circuit has recognized excessive force claims for the use of handcuffs, it has done so only when it is objectively clear that the handcuffs would injure or

---

[7] As Plaintiff's claims for unreasonable search and seizure and for false detention are barred under *Heck*, only his claim for excessive force will be analyzed for failure to state a claim.

harm the arrestee. *Stainback v. Dixon*, 569 F.3d 767, 773 (7th Cir. 2009); *see also Tibbs v. City of Chicago,* 469 F.3d 661, 666 (7th Cir. 2006) (concluding that the arresting officer did not act unreasonably when he fastened the plaintiff's handcuffs too tightly, and the plaintiff, whose injuries did not require medical care, complained only once about his handcuffs "without elaborating on any injury, numbness, or degree of pain"). Plaintiff does not specify which Defendant employed handcuffs and shackles, makes no specific allegations of force related to the use of the restraints, and does not allege that he communicated any injury to Defendants. Therefore, the allegations in Plaintiff's Complaint related to the use of restraints are dismissed without prejudice.

### B. Allegations of Being Yelled and Cursed at are Insufficient to Support an Excessive Force Claim.

Plaintiff's excessive force claims also include allegations that both Defendants Jamerson and Spaulding cursed and yelled at him. (Dkt. 1 ¶¶ 16-17.) Although these claims identify which Defendant committed these acts, the allegations fail to state a claim for excessive force because they do not allege the exertion of any physical force. As noted above, the Supreme Court, the Seventh Circuit and this Court have all held that "there cannot be *excessive* force without *some* force." *McNair*, 279 F.3d at 467 (quoting *Graham* 490 U.S. at 391-394); *see also Chriswell v. Vill. of Oak Lawn*, No. 11 C 00547, 2013 WL 5903417, at *9 (N.D. Ill. Nov. 4, 2013), *aff'd sub nom. Chriswell v. O'Brien*, 570 F. App'x 617 (7th Cir. 2014) (holding that an officer's statement that "black equals crack" "was (if made) disgraceful and reprehensible, but it does not amount to an unreasonable use of force"); *Mannix v. Humer*, No. 10 C 5063, 2011 WL 116888, at *3 (N.D. Ill. Jan. 11, 2011) (allegations that officers "spoke harshly" to plaintiff were not enough to make out a plausible claim of excessive force). Because Plaintiff's allegations

regarding being yelled and cursed at involve no physical force, they cannot state a claim for excessive force and are dismissed.

### C. Allegations of Physical Assault are Sufficient to State a Claim for Excessive Force.

Lastly, Defendants argue that Plaintiff's allegation that he was physically assaulted while being transported fails because he did not specify which Defendant assaulted him and also because Plaintiff did not allege that the assault caused even a *de minimis* injury. (Dkt. 28 at 6.) As a threshold matter, Plaintiff alleged that Jamerson assaulted him while being escorted into the holding facility, which is specific enough to identify the responsible party. (Dkt. 1 ¶ 17.) Second, although some Circuits require allegations of an injury in Fourth Amendment excessive force claims, the Seventh Circuit does not. *See e.g., Gonzalez v. City of Elgin*, 578 F.3d 526, 540 (7th Cir. 2009) ("although evidence of injury can throw some light on the question whether the officers used excessive force, there is no requirement that plaintiffs show any particular degree of injury."); *Chelios v. Heavener*, 520 F.3d 678, 690 (7th Cir. 2008) ("Although injury is a relevant factor in determining whether an officer used excessive force, an excessive force claim does not require any particular degree of injury."). As discussed above, Plaintiff must only allege that some physical force was employed and that the officer was unreasonable in exerting that force. *See, e.g.*, *McNair,* 279 F.3d at 467. When viewed in the light most favorable to him, Plaintiff's allegation that he was physically assaulted in custody is sufficient to survive Defendants' Rule 12(b)(6) challenge. *See e.g. Chriswell*, No. 11 C 00547, 2013 WL 5903417, at *8 (holding that, read liberally, a plaintiff's complaint that sates that an officer "knocked [plaintiff's] phone out of her hand" and "pulled on her clothing, her person, and her private parts" was sufficient to survive a motion to dismiss); *Bernal v. Johnson*, No. 13 CV 06726, 2014 WL 4976212, at *4 (N.D. Ill. Sept. 25, 2014) (holding that plaintiffs' allegation that an officer

"directly sprayed Plaintiffs with pepper spray" was sufficient to survive a motion to dismiss).

## III. Qualified Immunity

Finally, Defendants urge the Court to dismiss Plaintiff's claims based on the doctrine of qualified immunity. (Dkt. 23 at 9-11.) Qualified immunity protects public officials from liability, trial, and interference with their duties when their conduct does not violate clearly established constitutional rights. *Purtell v. Mason*, 527 F.3d 615, 621 (7th Cir. 2008). The issue of immunity is a legal question that should be resolved at the earliest possible stages of litigation. *Id.*; *see also Landstrom v. Illinois Dep't of Children & Family Servs.*, 892 F.2d 670, 674 (7th Cir. 1990) (citing *Anderson v. Creighton*, 483 U.S. 635, 646 (1986); *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985); and *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). (Dkt. 23 at 10.) A qualified immunity defense is normally presented on summary judgment, but can also be presented in a motion to dismiss. *Stevens v. Umsted*, 131 F.3d 697, 706 (7th Cir. 1997). When qualified immunity is asserted at this stage in the litigation, however, the Court considers "only the facts alleged in the complaint, which [it] must accept as true." *Gossmeyer v. McDonald*, 128 F.3d 481, 495 (7th Cir. 1997). In this case, because all of his other claims have been dismissed on other grounds, the Court will evaluate the applicability of qualified immunity with respect only to Plaintiff's excessive force claim involving physical assault by Inspector Jamerson.[8]

---

[8] Even if the Court did not dismiss Plaintiff's unreasonable search and seizure and false detention claims under *Heck*, Defendants would be immune from these allegations because it would not have been clear to a reasonable officer in the Defendants' position that their search and detention of Plaintiff was unlawful. In this case, the Defendants had received statements from three USPS employees indicating that Plaintiff had made threats with a weapon; there was a regulation providing for unwarranted searches of USPS employee's lockers, and it would have been reasonable for the Defendants to believe it was illegal to possess a firearm on USPS property. This information was sufficient to allow a reasonable officer in the same position to have believed that the search and detention of Townsel was not unlawful. Furthermore, even if the Defendants reasonably mistook the facts or reasonably misjudged the legal standard, qualified immunity would still apply. *See Weinmann v. MClone*, 787 F.3d 444, 450 (7th Cir. 2015). Furthermore, Plaintiff has not submitted any closely analogous cases that would weigh against qualified immunity. As a result, the Defendants are entitled to qualified immunity with respect to Plaintiff's unreasonable search and seizure and false detention claims. With respect to Plaintiff's excessive force claims relating to cursing at Plaintiff and the use of restraints, when a Plaintiff does not state a "colorable excessive force

Determining whether qualified immunity applies to Jamerson's actions requires a two-part test: "(1) whether the facts, taken in the light most favorable to the plaintiff, show that the defendant violated a constitutional right; and (2) whether that constitutional right was clearly established at the time of the alleged violation." *Wheeler v. Lawson*, 539 F.3d 629, 639 (7th Cir. 2008) (citing *Saucier v. Katz,* 533 U.S. 194, 201 (2001)); *see also Gustafson*, 803 F.3d at 890-1. "The 'dispositive inquiry' . . . is whether it would [have been] clear to a reasonable officer in the agents' position that [their] conduct was unlawful in the situation [they] confronted. *Wood*, 134 S. Ct. at 2067. In this analysis, the plaintiff has "the burden of establishing that his or her rights were violated *and* that the law concerning the proffered right 'was clearly established at the time the challenged conduct occurred.'" *Burritt v. Ditlefsen*, 807 F.3d 239, 249 (7th Cir. 2015) (quoting *Mustafa v. City of Chicago*, 442 F.3d 544, 548 (7th Cir.2006)) (emphasis added). To overcome a qualified immunity defense, Plaintiff would have to "identif[y] a 'closely analogous case that established a right to be free from the type of force the police officers used on him' or of showing 'that the force was so plainly excessive that, as an objective matter, the police officers would have been on notice that they were violating the Fourth Amendment.'" *Weinmann v. McClone*, 787 F.3d 444, 450 (7th Cir. 2015) (quoting *Findlay v. Lendermon,* 722 F.3d 895, 899 (7th Cir.2013)).

As described above, Plaintiff's remaining excessive force allegation that Jamerson physically assaulted him while he was restrained is sufficient to state a claim for excessive force. Furthermore, assaulting a restrained detainee was clearly established as a constitutional violation at the time the conduct occurred. *See Jacobs v. City of Chicago*, 215 F.3d 758, 774 (7th Cir. 2000) ("At the time the Defendant Officers used force against [the Plaintiff] in this case, it was

---

constitutional claim," the Court need not consider a defendant's qualified immunity defense. *See e.g. Payne v. Cty. of Cook*, No. 15 C 3154, 2016 WL 1086527, at *14 (N.D. Ill. Mar. 21, 2016).

clearly established that police officers do not have the right to shove, push, or otherwise assault innocent citizens without any provocation whatsoever.") (quotation omitted). Additionally, even conclusory and unenlightening language in a complaint may be sufficient to defeat a motion to dismiss based on qualified immunity because the plaintiff is not required "to anticipate a qualified immunity defense and allege every fact needed to defeat it in the complaint." *See e.g.*, *Rusinowski v. Vill. of Hillside*, 835 F. Supp. 2d 641, 650 (N.D. Ill. 2011) (noting that, while the officer's "qualified immunity claim may have merit upon a more developed record, this Court cannot conclude that the allegations in the Complaint are so deficient or indicative of qualified immunity that dismissing the Complaint at this stage is appropriate."). When viewing the facts in a light most favorable to Plaintiff, this Court cannot dismiss his excessive force regarding being assaulted based on qualified immunity, although Defendants' qualified immunity defense may be more persuasive after discovery has been conducted.

## CONCLUSION

For the reasons stated herein Defendant's Motion to Dismiss is granted with respect to Plaintiff's claim for unreasonable seizure in Count I and with respect to Counts II and III in their entirety. Defendant's Motion to Dismiss is also granted with respect to Plaintiff's allegations of excessive force in Count I related to Plaintiff being placed in restraints and being verbally assaulted. However, Defendant's Motion to Dismiss is denied with respect to Plaintiff's allegations of excessive force in Count I related to being physically assaulted by Defendant Jamerson.

Date: 3/6/2017

_____
Virginia M. Kendall, U.S. District Court Judge